# IN THE COURT OF APPEALS OF IOWA

No. 25-0232
Filed May 21, 2025

**IN THE INTEREST OF Z.N.,**
**Minor Child,**

**I.E., Mother,**
        Appellant.

_____

        Appeal from the Iowa District Court for Polk County, Rachael E. Seymour,

Judge.


        A mother appeals the termination of her parental rights to a minor child.

**AFFIRMED.**


        Cole J. Mayer of Des Moines Juvenile Public Defender, Des Moines, for

appellant mother.

        Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney

General, for appellee State.

        Lisa Allison of Youth Law Center, Des Moines, attorney and guardian ad

litem for minor child.


        Considered without oral argument by Greer, P.J., Chicchelly, J., and Vogel,

S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**VOGEL, Senior Judge.**

A one-and-a-half-year-old child came to the attention of the Iowa Department of Health and Human Services (HHS) in October 2023 after receiving a report that the mother was using methamphetamine while caring for the child and that the child was present during a domestic-violence incident. HHS later issued a founded child-abuse assessment, finding the child's father repeatedly abused the mother in the presence of the child.

HHS enacted a safety plan that placed the child with fictive kin. A month later, the mother tested negative for illicit substances and the child was returned to her mother's care with services offered. Yet in February 2024, the mother relapsed and reported using methamphetamine. Two weeks later, the child's hair sample tested positive for methamphetamine and cocaine. Because of the mother's substance use and the still unresolved domestic violence in the home, the child was removed from her mother's custody. In March, the child was adjudicated in need of assistance under Iowa Code section 232.96A(3)(b), (14), and (15) (2024). The child remained in the care of the same fictive kin.

Over the next eight months, the mother never achieved meaningful sobriety and continued to pursue a relationship with the abusive father. The State petitioned to terminate her parental rights to the child and the juvenile court agreed, terminating the mother's rights under Iowa Code section 232.116(1)(d), (h), and (*l*).[1]

---

[1] The father's parental rights were also terminated. He does not appeal.

The mother now appeals, claiming (1) the juvenile court should have granted her six more months to work toward reunification, (2) the juvenile court should have entered a guardianship, (3) termination is not the child's best interest, and (4) the closeness of the parent-child relationship should impede termination. We consider each argument in turn, employing de novo review. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

## I.    Six Additional Months for Reunification.

The mother first argues that the juvenile court erred by terminating her parental rights less than a year after the child's removal, rather than granting her more time to work toward reunification. A juvenile court has the discretion to grant a parent six additional months if it finds "the need for removal of the child from the child's home will no longer exist" after that period. Iowa Code § 232.104(2)(b). The juvenile court declined to give the mother more time, and we agree.

The mother has shown no lasting period of sobriety, even after completing treatment. After removal, the mother continued using cocaine and methamphetamine and was discharged from an inpatient program in May for noncompliance. She enrolled in another inpatient program in June and successfully completed that program in September. However, she relapsed on methamphetamine soon after and used again just a week before the termination hearing. While the mother has been forthright about her struggles to remain sober, her inability to sustain any progress does not support a finding that need for the child's removal would not still exist in six months.

The mother's continued relationship with the child's father is also worrisome. Despite a long history of physically abusing the mother, the mother

continued to seek out the father. He was also present when she relapsed after treatment. She has defended their ongoing contact as "co-parenting," even with a no-contact order, some of the abuse occurring in the child's presence, and the father's failure to engage with any HHS services. Thus, the mother's lack of insight into the dangers posed to the child by the abusive father also indicates that the basis for removal would still exist in six months. The mother's request for additional time was appropriately denied.

## II.      Guardianship.

The mother next argues that the juvenile court should have established a guardianship, with the fictive kin as guardian, in lieu of termination. Yet "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (Iowa 2018) (citation omitted). That is especially true for the now-three-year-old child, as a guardianship would leave the child in limbo with long-term stability in question. *See id.* at 477–78. Given the child's young age, the fictive kin's willingness to adopt, and the child's need for permanency, we agree with the juvenile court that a guardianship is not a suitable alternative for the child.

## III.      Child's Best Interest.

Beyond her requests for alternatives to termination, the mother also disputes whether the State proved by clear and convincing evidence that terminating her parental rights is in the child's best interest.[2]  *See* Iowa Code § 232.116(2). To guide our best-interest analysis, we "give primary consideration

---

[2] Although we normally follow a three-step termination framework, when a parent does not contest one or more steps on appeal, we need not address them. *See In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010). Here, the mother does not contest the State proved termination under Iowa Code section 232.116(1)(h).

to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.*

We agree with the juvenile court that termination is in the child's best interest. First, the child has felt the consequences of violence in her home. The child exhibits strong reactions when others are yelling or arguing, even other children wrestling or "play fight[ing]." The HHS social worker similarly observed that the child is "weary of other people." Given the mother's continued contact with the father, the child is best served by a home free from domestic violence and that would prioritize her safety and healing moving forward. Second, the mother's ongoing struggle with substance use jeopardizes the child's safety. As did the juvenile court, we also commend the mother for engaging in treatment and hope she continues to work toward sobriety. However, the child has endured significant turmoil in her young life and deserves a stable, sober home environment now. *See In re A.C.*, 415 N.W.2d 609, 613 (Iowa 1987) ("The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems."). Thus, placing the child's welfare at the forefront, we agree that termination is in the child's best interest.

## IV.    Impediments to Termination.

Finally, the mother argues that the close bond she shares with the child should impede termination. *See* Iowa Code § 232.116(3)(c). The mother carries the burden to prove one or more discretionary impediments to termination. *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021). To meet that burden here, she must show "clear and convincing evidence that the termination would be detrimental to

the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c).

Though the mother asserts a bond with the child, "'our consideration must center on whether the child will be disadvantaged by termination,' not whether the parent loves the child." *W.T.* 967 N.W.2d at 324 (citation omitted). The juvenile court declined to apply this impediment, citing the child's "very young age," the willingness of her placement to adopt, her need for permanency, and the "safety risk" the mother's "behaviors continue to pose." We agree. Because the mother has not shown that termination would be detrimental to the child, we affirm termination of her parental rights.

**AFFIRMED.**